UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
IN ADMIRALTY

**KOMPASS KAPITAL FUNDING, LLC**

        **Plaintiff,**

**v.**                                                                                          **CIVIL ACTION NO.:**

**CROSBY ENTERPRISES, L.L.C.;**
**CROSBY MARINE TRANSPORTATION,**                **SECTION ""**
**LLC; CROSBY TUGS, LLC; KURT J.**
**CROSBY, individually; TALA MARINE, L.L.C.;**         **DIVISION**
**TALA REAL ESTATE, LLC; TALA**                         **Judge:**
**ENVIRONMENTAL, LLC; CROSBY &**
**SON TOWING, LLC; CROSBY GROUP, LLC;**
**CROSBY REAL ESTATE, LLC; KURT**                   **RULE 9(h) - Admiralty**
**CROSBY, LLC; PADDY CROSBY, L.L.C.;**
**CROSBY TOWBOATS, LLC; NINE MI**
**MOORING SERVICE, L.L.C.; CROSBY**
**MARINE TOWING, L.L.C.; CROSBY**
**BOAT CO., L.L.C.; SUSAN MARIE, L.L.C.;**
**CROSBY INLAND MARINE, L.L.C.; CROSBY**
**BOAT RENTALS, L.L.C.; TARA CROSBY,**
**L.L.C.; CROSBY INSHORE MARINE**
**SERVICE, L.L.C.; A&C BARGES, LLC;**
**CROSBY OFFSHORE MARINE SERVICE, LLC;**
**AARON JOSEPH, L.L.C.; WEBB CROSBY, L.L.C.,**
*in personam*, **and the following**
**documented vessels, with their engines,**
**machinery, equipment, fixtures, tackles,**
**appurtenances, etc.,** *in rem*: **M/V VINTON**
**CROSBY (O/N 566645) and M/V CROSBY**
**POWER (O/N 525887),**

        **Defendants.**
_____/

## <u>VERIFIED COMPLAINT</u>

    Plaintiff Kompass Kapital Funding, LLC ("Plaintiff" or "Kompass") files its Verified

Complaint *in personam* against Defendants Kurt J. Crosby ("Guarantor"), Crosby Enterprises,

L.L.C. ("Crosby Enterprises"), Crosby Marine Transportation, LLC ("Crosby Marine," or "Vessel

Owner"), Crosby Tugs, L.L.C. ("Crosby Tugs"), Crosby Dredging, LLC ("Crosby Dredging"), Tala Marine, L.L.C. ("Tala Marine"), Tala Real Estate LLC ("Tala Real Estate"), Tala Environmental, LLC ("Tala Environmental"), Crosby & Son Towing, LLC  ("C&S"), Crosby Group, LLC ("CG"), Crosby Real Estate, LLC ("CRE"), Kurt Crosby, LLC ("KC"), Paddy Crosby, L.L.C. ("Paddy"), Crosby Towboats, LLC ("CT"), Nine Mi Mooring Service, L.L.C. ("Nine Mi"), Crosby Marine Towing, L.L.C. ("CMT"), Crosby Boat Co., L.L.C. ("CBC"), Susan Marie, L.L.C. ("Susan Marie"), Crosby Inland Marine, L.L.C. ("CIM"), Crosby Boat Rentals, L.L.C. ("CBR"), Tara Crosby, L.L.C. ("TC"), Crosby Inshore Marine Service, L.L.C. ("Crosby Inshore"), A&C Barges, LLC ("A&C"), Crosby Offshore Marine Service, L.L.C. ("COMS"), Aaron Joseph, L.L.C. ("AJ"), Webb Crosby, L.L.C. ("WC," and, collectively with Crosby, Crosby Enterprises, Crosby Marine, Crosby Tugs, Crosby Dredging, Tala Marine, Tala Real Estate, Tala Environmental, C&C, CG, CRE, KC, Paddy, Nine Mi, CMT, CBC, CIM, CBR, TC, Crosby Inshore, A&C, COMS, and AJ, the "Individual Defendants").   Pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), Kompass also brings this action against the vessels M/V VINTON CROSBY (USCG Official Number 566645) and M/V CROSBY POWER (USCG Official Number 525887), their respective engines, machinery, tackles, appurtenances, apparel, etc. *in rem* (together, the "Collateral Tugboats"; with the Guarantor Entities and Borrower Entities, as defined below, the "Defendants").

This Verified Complaint seeks: enforcement of certain first preferred ship mortgages, other security interests in the Vessels, and in other collateral granted to Kompass by the Individual Defendants as described in the Loan Agreement (defined below) and Guaranties (defined below), and of related civil and maritime contractual rights in favor of Kompass against the Vessels, *in*

*rem*, and against the Vessel Owner, *in personam*.  Specifically, Kompass seeks a monetary judgment on the related obligations owed by the Defendants to Kompass under the Loan Agreement, Guaranties, and associated loan documents, along with issuance of warrants of arrest for the Vessels pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

## PARTIES, VESSELS, JURISDICTION, AND VENUE

1.    Plaintiff is a limited liability company organized under the laws of the State of Kansas, and with its principal place of business in the State of Kansas.

2.    Crosby Enterprises is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

3.    Crosby Marine is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

4.    Crosby Tugs is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein. Crosby Dredging, Tala Marine, Tala Real Estate, Tala Environmental, C&C, CG, CRE, KC, Paddy, Nine Mi, CMT, CBC, CIM, CBR, TC, Crosby Inshore, A&C, COMS, AJ and WC shall be collectively referred to herein as the "Borrower Entities."

3

5.      Crosby Dredging is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

6.      Tala Marine is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

7.      Tala Real Estate is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

8.      Tala Environmental is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

9.      C&S is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

10.     CG is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does

business in the State of Kansas, including entering into the contracts and agreements alleged herein.

11.    CRE is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

12.    KC is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

13.    Paddy is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

14.    Nine Mi is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

15.    CMT is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

16.     CBC is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

17.     CIM is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

18.     CBR is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

19.     TC is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

20.     Crosby Inshore is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

21.     A&C is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also

does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

22.    COMS is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

23.    AJ is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.

24.    WC is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located in Lafourche Parish, Louisiana, which also does business in the State of Kansas, including entering into the contracts and agreements alleged herein.  Crosby Dredging, Tala Marine, Tala Real Estate, Tala Environmental, C&C, CG, CRE, KC, Paddy, Nine Mi, CMT, CBC, CIM, CBR, TC, Crosby Inshore, A&C, COMS, AJ and WC shall be collectively referred to herein as the "Guarantor Entities."

25.    Kurt Crosby is a natural person who, upon information and belief, resides in Lafourche Parish, Louisiana, and is either the principal officer or an authorized agent of each of the Borrower Entities and Guarantor Entities.

26.    The Vessel Owner is the owner of two tugboat vessels which are the subject of this action (the "Collateral Tugboats").

27.    The first such Collateral Tugboat is a U.S. flagged tugboat vessel named M/V CROSBY POWER, bearing the U.S. Coast Guard Official No. 525887 (the "Power").

28. The second such Collateral Tugboat is a U.S. flagged tugboat vessel named M/V VINTON CROSBY, bearing the U.S. Coast Guard Official No. 566645 (the "Vinton").

29. This claim arises under the general maritime law of the United States, 28 U.S.C. § 1333, and 46 U.S.C. § 31322, *et seq*. (the "Commercial Instruments and Maritime Lien Act"), and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

30. While this matter is designated an admiralty and maritime claim within the meaning of Rule 9(h), strictly in the alternative federal diversity jurisdiction is also appropriate in this matter, as the amount in controversy substantially exceeds $75,000.00, and the parties are citizens of two different states (Kansas and Louisianna"). *See* 28 U.S.C. §1332(a).

31. Venue is proper within this District because the *in rem* defendant Vessels are presently located within the U.S. Eastern District of Louisiana, and pursuant to 28 U.S.C. §1391(b) venue is appropriate here because the defendants reside within this District and the events that give rise to this action occurred within this District.

## BACKGROUND ALLEGATIONS

*A.*    *The Loan and Loan Documents.*

32. Plaintiff was a specialty finance company at the time of the Loan and is now a holding company.

33. Upon information and belief, Defendants operate a marine towing service, which is headed by Kurt Crosby ("Guarantor"), with different services related to marine towing performed by each of his Borrower Entities and Guarantor Entities.

34. On or around November 17, 2023, the Borrower Entity entered into a contract with Plaintiff whereby Plaintiff would loan the Borrower Entities and Guarantor $9,700,000.00, and the

Borrower Entities would make timely payments repaying the same (the "Loan").

35.    To effectuate this Loan, the parties—including Guarantor—entered into a series of agreements governing the terms and security of repayment for the same: The Note, the Loan and Security Agreement, the Crosby Guaranty, the Guarantor Entities Guaranty, the Earnings Assignment, the Deposit Account Pledge, the Power Mortgage, and the Vinton Mortgage (individually defined below; collectively, the "Loan Documents").

**B.**       ***The Note and the Loan and Security Agreement.***

36.    On or around November 17, 2023, the Borrower Entities entered into the Note with Plaintiff, promising that they would make timely repayment of the principal amount of the Loan, "together with interest" as specified by the other Loan Documents. A true and accurate copy of this Note is attached as **Exhibit 1**.

37.    Through the Note, the Borrower Entities also promised that it, and all the Loan Documents, would "be governed and construed in accordance with the laws of the State of Kansas, in which state it shall be performed, and shall be binding upon Borrowers, and their legal representatives, successors, and assigns." (Ex. 1 at p. 1).

38.    Additionally, the Borrower Entities promised that their obligations under the Note and other Loan Documents would be shared "jointly and severally" between themselves, making each individual Borrower Entity liable for the total amount of any past due balance on the Loan. (*Id.*)

39.    Also on or around November 17, 2023, the Borrower Entities entered into a Loan and Security Agreement, containing additional terms relating to the Note and the Loan. A true and accurate copy of this Loan and Security Agreement is attached hereto as **Exhibit 2**.

40.    The Loan and Security Agreement provides that interest would accrue on the past

due balance of the Loan at the Prime Rate established by the Wall Street Journal, plus 13.5% per annum. (Ex. 2 at pp. 1, 6). The Loan and Security Agreement also provides that this rate will increase by 6.0% if Borrowers defaults on the Loan in any manner (*Id.* at p. 3).

41.    The Loan and Security Agreement also provides that the Borrower Entities would repay the Loan in monthly interest-only payments, plus two bi-annual principal payments, "each in the amount of $250,000.00." (*Id.* at p. 7 ¶ 2.1(b)).

42.    As additional inducement for Plaintiff to extend the Borrower Entities the Loan, the Borrower Entities and Crosby promised collateral that would serve "[a]s security for payment and performance of the Obligations," which included, among other things, all accounts, goods, inventory, software, securities, investment property, financial assets and deposit accounts, together with certain physical assets such as cranes and vessels (the "Collateral"). (*Id.* at p. 10 ¶ 6.1).

43.    This Collateral specifically includes three 150-ton commercial cranes: A Terex HC150 150-ton crane bearing the serial number AC39.7; a Terex HC150 150-ton crane bearing the serial number TRXHC110H0K6B0435; and a Terex HC150 150-ton crane bearing the serial number LT8BT1344FXW161924 (the "Collateral Cranes"). (*Id.* at ¶ 6.1(b)(i)-(iii)).

44.    Plaintiff—through the undersigned counsel—filed a UCC financing statement with the Louisiana Secretary of State on or around November 17, 2023 (the "UCC Statement"), perfecting its secured interest in the Collateral (including the Collateral Cranes). A true and accurate copy of this UCC Statement is attached hereto as **Exhibit 3**.

45.    The Loan and Security Agreement also provides that should any such event of default occur, Plaintiff could "declare its commitments to [the] Borrower[] [Entities] to be immediately due and payable," as well as to "take possession of any or all of the Collateral" with or without prior demand. (Ex. 2 at p. 23 ¶ 11.1).

46.    Finally, the Loan and Security Agreement provides that, in the event of a default, the Borrower Entities would "reimburse Lender for all reasonable costs, fees and expenses incurred by Lender or for which Lender becomes obligated in connection with the negotiation, preparation, consummation, collection of the Obligations or enforcement of this Agreement," including but not limited to "reasonable consultants' fees and attorneys' fees." (*Id.* at p. 30 ¶12.14).

47.    Crosby signed the Loan and Security Agreement as the authorized member of each of the Borrower Entities. (*Id.* at p. 34).

**B.    *The Guarantees***

48.    As additional inducement for Plaintiff to extend the Borrower Entities the Loan, also on November 17, 2023, Guarantor entered a Continuing Unconditional Guaranty Agreement ("Crosby Guaranty") in Plaintiff's favor. A true and accurate copy of this Crosby Guaranty is attached hereto as **Exhibit 4**.

49.    The Crosby Guaranty is a continuing and unconditional guaranty agreement, and it provides that "Guarantor unconditionally and absolutely guarantees to Lender or other person paying or incurring the same, irrespective of the validity, regularity or enforceability of any instrument, writing, arrangement or credit agreement relating to or the subject of any such financial accommodation, the prompt payment in full of all of the" past due balance of the Loan, along with all interest, costs, and attorney's fees. (Ex. 4 at p. 1).

50.    Guarantor also "expressly waive[d] diligence in collection or protection, presentment, demand or protest or in giving notice to anyone of the protest, dishonor, default, or nonpayment or of the creation or existence of any of the Guaranteed Debt or of any security or [C]ollateral therefor." (*Id.* at p. 3).

51.    Additionally, through the Crosby Guaranty, Guarantor promised that "there shall be

no obligation on the part of Lender, at any time, to resort for payment from Borrowers or to anyone else, or to any collateral, security, property, liens or other rights and remedies whatsoever, all of which are hereby expressly waived by Guarantor." (*Id.*).

52.    Finally, like the Loan and Security Agreement, the Crosby Guarantor provides that Guarantor would pay "all costs, legal expenses, and attorneys' and paralegals' fees" relating to enforcement of the Crosby Guaranty. (*Id.* at p. 1).

53.    Guarantor signed the Crosby Guaranty. (*Id.* at p. 7).

54.    Also on or around November 17, 2023, the Guarantor Entities entered a separate Continuing Unconditional Guaranty Agreement ("Guarantor Entities Guaranty") in Plaintiff's favor, which is also a separate, unconditional and continuing guaranty of payment of the past due balance of the Loan. A true and accurate copy of this Guarantor Entities Guaranty is attached hereto as **Exhibit 5**.

55.    While the Guarantor Entities Guaranty is a separate legal document, identifying and signed on behalf of each Guarantor Entities, the Guarantor Entities Guaranty's terms and conditions are identical to those of the Crosby Guaranty. Accordingly, Plaintiff restates its above references to the terms and conditions from the Crosby Guaranty as though set forth herein for the Guarantor Entities Guaranty. (*See* Ex. 5).

56.    A managing member or authorized agent of each individual Guarantor Entity signed the Guarantor Entities Guaranty. (*Id.* at pp. 7-10).

**C.    *The Vessel Mortgages, the Earnings Assignment, and the Deposit Account Pledge.***

57.    As additional inducement for Plaintiff to extend the Borrower Entities the Loan, also on or around November 17, 2023, Crosby Marine executed a First Preferred Ship Mortgage (the "Power Mortgage") for the M/V CROSBY POWER. A true and accurate copy of the recorded

Power Mortgage is attached hereto as **Exhibit 6**.

58.    Relatedly, on the same date Crosby Marine executed a First Preferred Ship Mortgage (the "Vinton Mortgage") for the M/V VINTON CROSBY (collectively, the "Vessel Mortgages"). A true and accurate copy of the Vinton Mortgage is attached hereto as **Exhibit 7**.

59.    Through the Power Mortgage, Crosby Marine promised a security interest in the Power that would "secure the payment when due of all amounts owed by Borrowers under the Loan Agreement and the other Loan Documents." (Ex. 6 at p. 1).

60.    This mortgage included, among other things, all "masts, boilers, cables, engines, machinery, bowsprits, sails, riggings, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, cranes, equipment, electronics, computers, software, electronic records, records and papers whether on board or not, together with all accessories, substitutions, additions, replacements, improvements, parts and accessions now existing or hereafter made" to the Power. (*Id.*).

61.    The Power Mortgage also provides that, in the event of any event of default under the Loan Documents, Plaintiff could "[e]xercise all rights, remedies, powers, and privileges," including but not limited to "[t]ake the Vessel without legal process at any time wherever the same may be had." (*Id.* at p. 7).

62.    The total amount of the Power Mortgage is "9,700,000.00, plus interest and performance of the Mortgage covenants." (*Id.* at p. 11).

63.    On or around November 17, 2023, Plaintiff filed both the Power Mortgage and Vinton Mortgage with the U.S. Coast Guard's National Vessel Documentation Center, thereby perfecting Plaintiff's interest in the Power and Vinton, respectively. (*See* Ex. 6 and 7).

64.    Through the Vinton Mortgage, Crosby Marine promised a security interest in the

Vinton that would "secure the payment when due of all amounts owed by Borrowers under the Loan Agreement and the other Loan Documents." (Ex. 6 at p. 1).

65.   This mortgage included, among other things, all "masts, boilers, cables, engines, machinery, bowsprits, sails, riggings, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, cranes, equipment, electronics, computers, software, electronic records, records and papers whether on board or not, together with all accessories, substitutions, additions, replacements, improvements, parts and accessions now existing or hereafter made" to the Vinton. (*Id.*).

66.   The Vinton Mortgage also provides that, in the event of any event of default under the Loan Documents, it could "[e]xercise all rights, remedies, powers, and privileges," including but not limited to "[t]ake the Vessel without legal process at any time wherever the same may be had." (*Id.* at p. 7).

67.   The total amount of the Vinton Mortgage is "9,700,000.00, plus interest and performance of the Mortgage covenants." (*Id.* at p. 11).

68.   In addition to the Vessel Mortgages, to further induce Plaintiff to give the Loan in favor of the Borrowers, on November 17, 2023, Crosby Marine signed two Assignments of Earnings—one for the Power and one for the Vinton. A true and accurate copy of the Power Assignment and Vinton Assignment attached hereto as **Exhibits 8** and **9** respectively.

69.   The Power Assignment provides that Crosby Marine granted Plaintiff "a continuing, first priority security interest, in all of Assignor's right, title and interest in and to:

   (i)   "all earnings of the Vessel, including, but not limited, to all moneys and claims for moneys due and to become due with respect thereto, whether as charter hire, freights, passage moneys, loans, indemnities, payments or otherwise, under, and all claims for damages arising out of any breach of (or

14

payment for variation or termination), any charter, contract of affreightment or other contract for the use or employment of the Vessel or other operation of the Vessel of every kind whatsoever,

(ii)   all remuneration for salvage and towage services, demurrage and detention moneys and any other earnings whatsoever due or to become due to Assignor arising from the use or employment of the Vessel,

(iii)  all moneys or other compensation payable by reason of requisition for title or for hire or other compulsory acquisition of the Vessel and all claims for damages in respect of the actual or constructive total loss of the Vessel, and

(iv)  all proceeds of all of the foregoing."

(Ex. 8 at pp. 1-2).

70.   Crosby signed the Power Assignment as the authorized officer of Crosby Marine. (*Id.* at p. 5).

71.   The Vinton Assignment provides that Crosby Marine granted Plaintiff "a continuing, first priority security interest in, all of Assignor's right, title and interest in and to:

(v)   "all earnings of the Vessel, including, but not limited, to all moneys and claims for moneys due and to become due with respect thereto, whether as charter hire, freights, passage moneys, loans, indemnities, payments or otherwise, under, and all claims for damages arising out of any breach of (or payment for variation or termination), any charter, contract of affreightment or other contract for the use or employment of the Vessel or other operation of the Vessel of every kind whatsoever,

(vi)  all remuneration for salvage and towage services, demurrage and detention moneys and any other earnings whatsoever due or to become due to Assignor arising from the use or employment of the Vessel,

(vii) all moneys or other compensation payable by reason of requisition for title or for hire or other compulsory acquisition of the Vessel and all claims for damages in respect of the actual or constructive total loss of the Vessel, and

(viii) all proceeds of all of the foregoing."

(Ex. 9 at pp. 1-2).

72.   Crosby signed the Vinton Assignment as the authorized officer of Crosby Marine. (*Id.*

at p. 5).

73.  Finally, on November 17, 2023, also as inducement for Plaintiff to extend the Borrower Entities the Loan, Crosby Enterprises executed a Deposit Account Pledge in favor of Plaintiff. A true and accurate copy of this Deposit Account Pledge is attached hereto as **Exhibit 10**.

74.  Pursuant to this Deposit Account Pledge, Crosby Enterprises gave a business checking account, which it maintained with Cross First Bank, with the account number ending in 3255 (the "Account"), including but not limited to all additional deposits thereafter made to the Account, as security or the Loan. (Ex. 10 at p. 1).

75.  The Deposit Account Pledge provided that, should an event of default occur under the Loan Documents, Plaintiff may, among other things, "the right to an immediate setoff of the funds on deposit in the referenced Pledged Account to be applied against the Loan in accordance with the Loan." (*Id.* at p. 3).

76.  Crosby signed the Deposit Account Pledge as the authorized member of Crosby Enterprises.

### D.    *The Default.*

77.  The Borrowers have defaulted upon the Loan Documents by failing to make timely payments of the balance of the Loan when due.

78.  As a result, on January 16, 2026, counsel for Plaintiffs sent correspondence via certified mail to all Defendants in this action, informing them of the past due balance, and accelerating the full balance of the Loan pursuant to the Loan and Security Agreement (the "Acceleration Letter"). A true and accurate copy of this Acceleration Letter is attached hereto as **Exhibit 11**.

79.  The Borrower entities have not repaid the past due balance of the Loan in response to the Acceleration Letter, meaning that they are in breach of the Note and Loan and Security Agreement.

80.  Additionally, Guarantor has made no effort to repay the past due balance of the Loan, meaning that he is violation of the Crosby Guaranty.

81.  The Guarantor Entities have likewise not made any attempt to repay the past due balance of the Loan, which is a violation of the Guarantor Entities Guaranty.

82.  Crosby Marine has also not made any attempt to deliver the Vessels, or any earnings from the same in response to the Acceleration Letter, which is a breach of the Vessel Mortgages and the Earnings Assignments.

83.  Finally, Crosby Enterprises has not taken any effort to turn over control of the Account in order to satisfy the past due balance of the Loan in violation of the Deposit Account Pledge.

84.  As of January 16, 2026, the past due balance of the Loan, inclusive of interest, is $10,125,627.71. Plaintiff is also incurring attorney's fees and Court costs to recover on the Loan Documents.

## COUNT I - BREACH OF THE NOTE PLUS LOAN AND SECURITY AGREEMENT

### (As To Borrower Entities, Jointly and Severally)

85.  Plaintiff incorporates by reference the preceding paragraphs 1 through 86.

86.  The Note and the Loan and Security Agreement create a valid and enforceable contract for the repayment of the balance of the Loan.

87.  Per the terms of the Loan and Security Agreement, the Borrower Entities were required to, among other things, repay the outstanding balance on the Note when it was due.

88.  Additionally, per the terms of the Loan and Security Agreement, the Borrower Entities

were jointly and severally liable for all amounts owed.

89.  Plaintiff performed by tendering its performance of its obligations under the Note, including by loaning the principal amount of the Loan to the Borrower Entities.

90.  Borrower Entities materially breached the Note by failing to fully repay the outstanding balance of the Note when it was due and upon demand by Plaintiff.

91.  Borrower Entities material breach continues through filing of this Complaint.

92.  As a result of the Borrower Entities' material breaches of the Note and Loan and Security Agreement, Plaintiff has suffered damages, including the loss of the lent principal, interest on that balance, and expenses the Plaintiff incurred and is currently incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT II - BREACH OF THE CROSBY GUARANTY

### (As to Guarantor)

93.  Plaintiff incorporates by reference the preceding paragraphs 1 through 92.

94.  Guarantor entered the Crosby Guaranty in favor of Plaintiff.

95.  Guarantor entered the Crosby Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Guarantor because he is a member of the Borrower Entities.

96.  In the Crosby Guaranty, Guarantor absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

97.  Guarantor delivered the fully executed and binding Crosby Guaranty to Plaintiff.

98.  Relying on the Crosby Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount for the same.

99.  Guarantor did not fully, or even partially, repay the Note when it came due, and when demanded.

18

100. By failing to repay the Note after the Borrower Entities defaulted, Guarantor materially breached the Crosby Guaranty.

101. As a result of the material breaches of the Crosby Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT III - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to Crosby Dredging)

102. Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

103. Crosby Dredging, along with all other Guarantor Entities, entered the Guarantor Entities Guaranty in favor of Plaintiff.

104. Crosby Dredging entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Crosby Dredging because of its business relationship with the Borrower Entities.

105. In the Guarantor Entities Guaranty, Crosby Dredging absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

106. Crosby Dredging delivered the Guarantor Entities Guaranty to Plaintiff.

107. Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

108. Crosby Dredging did not fully repay the Note when it came due, and when demanded.

109. By failing to repay the Note after the Borrower Entities defaulted, Crosby Dredging breached the Guarantor Entities Guaranty.

19

110.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT IV - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to Tala Marine)

111.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

112.    Tala Marine entered the Guarantor Entities Guaranty in favor of Plaintiff.

113.    Tala Marine entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Tala Marine because of its business relationship with the Borrower Entities.

114.    In the Guarantor Entities Guaranty, Tala Marine absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

115.    Tala Marine delivered the Guarantor Entities Guaranty to Plaintiff.

116.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

117.    Tala Marine did not fully repay the Note when it came due, and when demanded.

118.    By failing to repay the Note after the Borrower Entities defaulted, Tala Marine breached the Guarantor Entities Guaranty.

119.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT V - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to Tala Real Estate)

120.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

121.    Tala Real Estate entered the Guarantor Entities Guaranty in favor of Plaintiff.

122.    Tala Real Estate entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Tala Real Estate because of its business relationship with the Borrower Entities.

123.    In the Guarantor Entities Guaranty, Tala Real Estate absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

124.    Tala Real Estate delivered the Guarantor Entities Guaranty to Plaintiff.

125.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

126.    Tala Real Estate did not fully repay the Note when it came due, and when demanded.

127.    By failing to repay the Note after the Borrower Entities defaulted, Tala Real Estate breached the Guarantor Entities Guaranty.

128.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT VI - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to Tala Environmental)

129.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

130.    Tala Environmental entered the Guarantor Entities Guaranty in favor of Plaintiff.

131.  Tala Environmental entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Tala Environmental because of its business relationship with the Borrower Entities.

132.  In the Guarantor Entities Guaranty, Tala Environmental absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

133.  Tala Environmental delivered the Guarantor Entities Guaranty to Plaintiff.

134.  Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

135.  Tala Environmental did not fully repay the Note when it came due, and when demanded.

136.  By failing to repay the Note after the Borrower Entities defaulted, Tala Environmental breached the Guarantor Entities Guaranty.

137.  As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT VII - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to C&S)

138.  Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

139.  C&S entered the Guarantor Entities Guaranty in favor of Plaintiff.

140.  C&S entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited C&S because of its business relationship with the

Borrower Entities.

141.    In the Guarantor Entities Guaranty, C&S absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

142.    C&S delivered the Guarantor Entities Guaranty to Plaintiff.

143.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

144.    C&S did not fully repay the Note when it came due, and when demanded.

145.    By failing to repay the Note after the Borrower Entities defaulted, C&S breached the Guarantor Entities Guaranty.

146.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT VIII - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to CG)

147.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

148.    CG entered the Guarantor Entities Guaranty in favor of Plaintiff.

149.    CG entered into the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited CG because of its business relationship with the Borrower Entities.

150.    In the Guarantor Entities Guaranty, CG absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

151.    CG delivered the Guarantor Entities Guaranty to Plaintiff.

152. Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

153. CG did not fully repay the Note when it came due, and when demanded.

154. By failing to repay the Note after the Borrower Entities defaulted, CG breached the Guarantor Entities Guaranty.

155. As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT IX - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to CRE)

156. Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

157. CRE entered the Guarantor Entities Guaranty in favor of Plaintiff.

158. CRE entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited CRE because of its business relationship with the Borrower Entities.

159. In the Guarantor Entities Guaranty, CRE absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

160. CRE delivered the Guarantor Entities Guaranty to Plaintiff.

161. Relying on the Guarantor Entities Guaranty, Plaintiff entered into the Note and granted the Borrower Entities the principal Loan amount of the same.

162. CRE did not fully repay the Note when it came due, and when demanded.

163. By failing to repay the Note after the Borrower Entities defaulted, CRE breached the

Guarantor Entities Guaranty.

164.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

**COUNT X - BREACH OF THE GUARANTOR ENTITIES GUARANTY**

**(As to KC)**

165.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

166.    KC entered the Guarantor Entities Guaranty in favor of Plaintiff.

167.    KC entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited KC because of its business relationship with the Borrower Entities.

168.    In the Guarantor Entities Guaranty, KC absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

169.    KC delivered the Guarantor Entities Guaranty to Plaintiff.

170.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

171.    KC did not fully repay the Note when it came due, and when demanded.

172.    By failing to repay the Note after the Borrower Entities defaulted, KC breached the Guarantor Entities Guaranty.

173.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without

limitation attorneys' fees and costs.

## COUNT XI - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to Paddy)

174.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

175.    Paddy entered the Guarantor Entities Guaranty in favor of Plaintiff.

176.    Paddy entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Paddy because of its business relationship with the Borrower Entities.

177.    In the Guarantor Entities Guaranty, Paddy absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

178.    Paddy delivered the Guarantor Entities Guaranty to Plaintiff.

179.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

180.    Paddy did not fully repay the Note when it came due, and when demanded.

181.    By failing to repay the Note after the Borrower Entities defaulted, Paddy breached the Guarantor Entities Guaranty.

182.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XII - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to Nine Mi)

183.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

184.    Nine Mi entered the Guarantor Entities Guaranty in favor of Plaintiff.

185.    Nine Mi entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Nine Mi because of its business relationship with the Borrower Entities.

186.    In the Guarantor Entities Guaranty, Nine Mi absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

187.    Nine Mi delivered the Guarantor Entities Guaranty to Plaintiff.

188.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

189.    Nine Mi did not fully repay the Note when it came due, and when demanded.

190.    By failing to repay the Note after the Borrower Entities defaulted, Nine Mi breached the Guarantor Entities Guaranty.

191.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XIII - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to CMT)

192.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

193.    CMT entered the Guarantor Entities Guaranty in favor of Plaintiff.

194.    CMT entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited CMT because of its business relationship with the Borrower Entities.

195.    In the Guarantor Entities Guaranty, CMT absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

196.    CMT delivered the Guarantor Entities Guaranty to Plaintiff.

197.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

198.    CMT did not fully repay the Note when it came due, and when demanded.

199.    By failing to repay the Note after the Borrower Entities defaulted, CMT breached the Guarantor Entities Guaranty.

200.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XIV - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to CBC)

201.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

202.    CBC entered the Guarantor Entities Guaranty in favor of Plaintiff.

203.    CBC entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited CBC because of its business relationship with the Borrower Entities.

204.    In the Guarantor Entities Guaranty, CBC absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

205.    CBC delivered the Guarantor Entities Guaranty to Plaintiff.

206.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted

the Borrower Entities the principal Loan amount of the same.

207.    CBC did not fully repay the Note when it came due, and when demanded.

208.    By failing to repay the Note after the Borrower Entities defaulted, CBC breached the Guarantor Entities Guaranty.

209.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XV - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to CIM)

210.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

211.    CIM entered the Guarantor Entities Guaranty in favor of Plaintiff.

212.    CIM entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited CIM because of its business relationship with the Borrower Entities.

213.    In the Guarantor Entities Guaranty, CIM absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

214.    CIM delivered the Guarantor Entities Guaranty to Plaintiff.

215.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

216.    CIM did not fully repay the Note when it came due, and when demanded.

217.    By failing to repay the Note after the Borrower Entities defaulted, CIM breached the Guarantor Entities Guaranty.

218.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XVI - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to CBR)

219.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

220.    CBR entered the Guarantor Entities Guaranty in favor of Plaintiff.

221.    CBR entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited CBR because of its business relationship with the Borrower Entities.

222.    In the Guarantor Entities Guaranty, CBR absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

223.    CBR delivered the Guarantor Entities Guaranty to Plaintiff.

224.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

225.    CBR did not fully repay the Note when it came due, and when demanded.

226.    By failing to repay the Note after the Borrower Entities defaulted, CBR breached the Guarantor Entities Guaranty.

227.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XVII - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to TC)

228.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

229.    TC entered the Guarantor Entities Guaranty in favor of Plaintiff.

230.    TC entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited TC because of its business relationship with the Borrower Entities.

231.    In the Guarantor Entities Guaranty, TC absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

232.    TC delivered the Guarantor Entities Guaranty to Plaintiff.

233.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

234.    TC did not fully repay the Note when it came due, and when demanded.

235.    By failing to repay the Note after the Borrower Entities defaulted, TC breached the Guarantor Entities Guaranty.

236.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XVIII - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to Crosby Inshore)

237.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

238.    Crosby Inshore entered the Guarantor Entities Guaranty in favor of Plaintiff.

31

239.    Crosby Inshore entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited Crosby Inshore because of its business relationship with the Borrower Entities.

240.    In the Guarantor Entities Guaranty, Crosby Inshore absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

241.    Crosby Inshore delivered the Guarantor Entities Guaranty to Plaintiff.

242.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

243.    Crosby Inshore did not fully repay the Note when it came due, and when demanded.

244.    By failing to repay the Note after the Borrower Entities defaulted, Crosby Inshore breached the Guarantor Entities Guaranty.

245.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XIX - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to A&C)

246.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

247.    A&C entered the Guarantor Entities Guaranty in favor of Plaintiff.

248.    A&C entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited A&C because of its business relationship with the Borrower Entities.

249.    In the Guarantor Entities Guaranty, A&C absolutely and unconditionally guaranteed

the payment and performance of the Borrower Entities' obligations to Plaintiff.

250.  A&C delivered the Guarantor Entities Guaranty to Plaintiff.

251.  Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

252.  A&C did not fully repay the Note when it came due, and when demanded.

253.  By failing to repay the Note after the Borrower Entities defaulted, A&C breached the Guarantor Entities Guaranty.

254.  As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XX - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to COMS)

255.  Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

256.  COMS entered the Guarantor Entities Guaranty in favor of Plaintiff.

257.  COMS entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited COMS because of its business relationship with the Borrower Entities.

258.  In the Guarantor Entities Guaranty, COMS absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

259.  COMS delivered the Guarantor Entities Guaranty to Plaintiff.

260.  Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

261.   COMS did not fully repay the Note when it came due, and when demanded.

262.   By failing to repay the Note after the Borrower Entities defaulted, COMS breached the Guarantor Entities Guaranty.

263.   As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XXI - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to AJ)

264.   Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

265.   AJ entered the Guarantor Entities Guaranty in favor of Plaintiff.

266.   AJ entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited AJ because of its business relationship with the Borrower Entities.

267.   In the Guarantor Entities Guaranty, AJ absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

268.   AJ delivered the Guarantor Entities Guaranty to Plaintiff.

269.   Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

270.   AJ did not fully repay the Note when it came due, and when demanded.

271.   By failing to repay the Note after the Borrower Entities defaulted, AJ breached the Guarantor Entities Guaranty.

272.   As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has

suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XXII - BREACH OF THE GUARANTOR ENTITIES GUARANTY

### (As to WC)

273.    Plaintiff incorporates by reference the preceding paragraphs 1 through 101.

274.    WC entered the Guarantor Entities Guaranty in favor of Plaintiff.

275.    WC entered the Guarantor Entities Guaranty to induce Plaintiff to extend the Loan to the Borrower Entities, which benefited WC because of its business relationship with the Borrower Entities.

276.    In the Guarantor Entities Guaranty, WC absolutely and unconditionally guaranteed the payment and performance of the Borrower Entities' obligations to Plaintiff.

277.    WC delivered the Guarantor Entities Guaranty to Plaintiff.

278.    Relying on the Guarantor Entities Guaranty, Plaintiff entered the Note and granted the Borrower Entities the principal Loan amount of the same.

279.    WC did not fully repay the Note when it came due, and when demanded.

280.    By failing to repay the Note after the Borrower Entities defaulted, WC breached the Guarantor Entities Guaranty.

281.    As a result of the material breaches of the Guarantor Entities Guaranty, Plaintiff has suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Plaintiff incurred and is incurring to recover those amounts including without limitation attorneys' fees and costs.

## COUNT XXIII – REPLEVIN ON THE SECURITY AGREEMENT

### (As to all Borrower Entities)

282.   Plaintiff incorporates by reference the preceding paragraphs 1 through 281.

283.   The Borrower Entities are in default of their obligations under the Loan and Security Agreement.

284.   Accordingly, pursuant to the Loan and Security Agreement, Plaintiff is entitled to immediate possession of the Collateral, up to an amount equal to the outstanding balance of the Note.

285.   Even though the Loan and Security Agreement specifically waives the Borrower Entities' right to notification regarding the debt becoming due, Plaintiff sent the Acceleration Letter, explaining that it planned to exercise its remedies under the Loan and Security Agreement. (Ex. 11).

286.   The Borrower Entities have failed to turn over or offer to turn over the Collateral of the Loan and Security Agreement to Plaintiff.

287.   This violation impairs Plaintiff's ability to enforce the terms of the Note, because Plaintiff cannot collect the outstanding debt or receive the Collateral to cover its damages.

288.   The Borrower Entities specifically bargained for, stipulated to, and understood all the terms of the Loan and Security Agreement, including each of their specific obligations therein to post Collateral with Plaintiff upon demand.

289.   The Borrower Entities received the benefit of this bargain because Plaintiff, at the Borrower Entities' request and direction, executed the Note and delivered the principal sum of the Loan thereunder.

290.   Moreover, per the UCC search and reasonably diligent analysis performed by

Plaintiff, Plaintiff is the only holder of a secured interest in the Collateral, meaning that it is entitled to immediate possession without need for additional judicial determination regarding priority.

291.    By virtue of the foregoing facts and based on the failure and/or refusal of the Borrower Entities to perform their specific contractual obligations under the Loan and Security Agreement, Note, Guaranties, Mortgages, *et al*., Plaintiff is entitled to an decree of this Court requiring the Borrower Entities to perform their specific obligations, which are that the Borrower Entities are specifically obligated to perform under the Loan and Security Agreement, to immediately turn over sufficient Collateral to Plaintiff to cover the outstanding balance on the Note, plus Plaintiff's additional incurred and anticipated losses. Plaintiff invokes the benefits of any federal law, Louisiana law, or the laws of any other state to seek immediate writ of replevin and/or write of possession.

## COUNT XXIV – RULE C ARREST

292.    Plaintiff incorporates by reference the preceding paragraphs 1 through 291.

293.    The Power Mortgage and Vinton Mortgage were both recorded with the U.S. Coast Guard, National Vessel Documentation Center in substantial compliance with 46 U.S.C. § 31321.

294.    Plaintiff holds a preferred ship mortgage on the Vessels which gives rise to maritime liens against the Vessels arrested pursuant to the Commercial Instruments and Maritime Lien Act, 46 U.S. Code § 31342 *et. seq*.

295.    Plaintiff is entitled to enforce its maritime lien(s) against the Vessels *in rem*, separately and together, by way of arrest of the Vessels in accordance with Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and seeks an issuance of warrants of arrest for each of the Vessels.

296.    Upon information and belief the Vessels are both currently located within this

Honorable District at or near Houma, Louisiana.

297.    Pursuant to Federal Rules of Civil Procedure, Supplemental Rules C and E(5)(a), Plaintiff requests that Warrants of Arrest issue for the Vessels, vessels M/V VINTON CROSBY (USCG Official Number 566645) and M/V CROSBY POWER (USCG Official Number 525887), and that thereafter the Court fix the principal amount of the bond or other security to obtain the Vessels' release at an amount sufficient to satisfy the amount of Plaintiff's claim and further requests that the Court require that the bond or other security be conditioned for the maximum permitted by Rule E(5), which permits up to twice the amount of Plaintiff's claim.

298.    Under Rule C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, Plaintiff is entitled to arrest the M/V VINTON CROSBY and M/V CROSBY POWER.

299.    Pursuant to applicable Local Rules, Plaintiff agrees to hold harmless and indemnify the U.S. Marshal and all of his deputies from any and all liability as a result of arresting the Vessels.

## DEMAND FOR RELIEF

Accordingly, Plaintiff respectfully requests the following relief:

A.    That this Verified Complaint is deemed good and sufficient.

B.    Adjudging the Borrower Entities, *in personam*, jointly and severally liable for damages from its default on the Note and Loan and Security Agreement in an amount to be determined at trial, including an award of pre- and post-judgment interest at the highest rate as allowable by law, contractual interest, attorneys' fees, and court costs;

C.    Adjudging guarantor Kurt Crosby liable for damages related to the Borrower Entities' default on the Note under the Crosby Guaranty, *in personam*, in an amount to be determined at

trial, including an award of pre- and post-judgment interest at the highest rate as allowable by law, contractual interest, attorneys' fees, and court costs;

D.     Adjudging the Guarantor Entities jointly and severally liable for damages related to the Borrower Entities' default on the Note under the Guarantor Entities Guaranty, *in personam*, in an amount to be determined at trial, including an award of pre- and post-judgment interest at the highest rate as allowable by law, attorneys' fees, and court costs;

E.     Issuing a writ of replevin and/or writ of possession ordering the Borrower Entities or their agents to immediately deliver the Collateral described in the Loan and Security Agreement to Plaintiff;

F.     Declaring that Plaintiff is the rightful owner of all proceeds in the Account pursuant to the Deposit Account Pledge, and permitting Plaintiff to apply the Account proceeds to the outstanding Loan balance;

G.     Process in due form of law according to the course and practice of this Honorable Court in causes in admiralty and maritime jurisdiction, particularly Rule C of the Supplemental Rules of Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, may issue against the Vessels, their engines, freight, tackle, appurtenances, apparel, etc. and other property aboard said vessels and appurtenances thereto, *in rem*;

H.     That the maritime liens of Plaintiff, be recognized and enforced with preference and priority over all persons whomsoever;

I.     After due proceedings, there be judgment rendered in favor of Plaintiff and against the Vessels, their engines, freight, tackle, appurtenances, apparel, etc. and other property aboard said vessels and appurtenances thereto, *in rem*, and against the Borrower Entities in the full amounts owed to Plaintiff and the Vessels be condemned and sold to satisfy the judgment to be

entered in favor of Plaintiff in the full amount of its claims, together with interest, costs, and attorneys' fees, as set forth above.

J.    That the M/V VINTON CROSBY and M/V CROSBY POWER be condemned and sold to pay the costs of *custodia legis* and damages owed to Plaintiff;

K.    For interest, attorneys' fees, and costs pursuant to the Note; and

L.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Aaron B. Greenbaum*
Aaron B. Greenbaum, T.A. (#31752)
Rowen Asprodites (#33135)
Anna G. Carey (#40305)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Aaron.Greenbaum@pjgglaw.com
Rowen.Asprodites@pjgglaw.com
Anna.Carey@pjgglaw.com

and

Christopher F. Hamilton
Fla. Bar No. 98527
**SPENCER FANE LLP**
201 N. Franklin St., Ste. 2150
Tampa, FL 33602
Phone: (813) 424-3500
chamilton@spencerfane.com
**COUNSEL FOR PLAINTIFF,**
**KOMPASS KAPITAL FUNDING, LLC**
